**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE RUIZ** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **RAYMOND LAWLER, ; THE ATTORNEY** | : | |
| **GENERAL OF THE STATE OF; THE** | : | |
| **DISTRICT ATTORNEY OF THE COUNTY** | : | |
| **OF:** | : | **NO.  11-1993** |

**NORMA L. SHAPIRO, J.**                                    **AUGUST 31, 2015**

<u>**MEMORANDUM**</u>

Petitioner Jose Ruiz ("Ruiz"), a prisoner at the Pennsylvania State Correctional Institution at Huntingdon, filed this habeas corpus petition under 28 U.S.C. § 2254.  The petition will be denied, and this court will not grant a certificate of appealability.

**I.     FACTS AND PROCEDURAL HISTORY**

In a Philadelphia Court of Common Pleas bench trial, Ruiz, represented by Scott DiClaudio, Esq. ("DiClaudio"), was tried for murder, carrying a firearm without a license, carrying a firearm on public streets, and possession of an instrument of crime.  Ruiz waived his right to trial by jury and agreed to be tried by Judge D. Webster Keogh ("Judge Keogh") after signing a written waiver of jury trial and participating in a colloquy on the record under oath.

Ruiz was convicted of first degree murder, carrying a firearm on a public street, and possession of an instrument of crime.  N.T. 10/18/1999 at 56-57.  He was sentenced to a mandatory life sentence for the first degree murder conviction, and two concurrent prison terms of two and a half to five years for the other offenses.  N.T. 12/3/1999 at 3-4.

There was evidence that at about 7:30 p.m. on July 21, 1997, Hiram Cuba ("Cuba") died from shots in the face, right temple, and chest.  Gunshots were heard.  One eyewitness observed Ruiz

standing over Cuba's body.  Another eyewitness heard the first shot, saw Cuba lying on the ground,

heard Cuba say in Spanish "Please don't kill me," watched Ruiz shoot Cuba in the face, and

observed Ruiz run away.  Ruiz did not testify at trial.

Ruiz in his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 states six grounds

for relief:

> GROUND ONE: "Petitioner is entitled to an arrest of judgment because the evidence
> was insufficient to sustain his conviction as the Commonwealth failed to prove his
> guilt beyond a reasonable doubt."
> GROUND TWO: "Petitioner is entitled to a new trial because the verdicts were
> against the weight of the evidence."
> GROUND THREE: "Trial counsel was ineffective for failing to investigate and/or
> present petitioner's alibi witnesses and appellate counsel was ineffective for failing
> to raise trial counsel's ineffectiveness."
> GROUND FOUR: "Trial counsel was ineffective for failing to motion the court to
> suppress the suggestive and unnecessary identification procedures used by the police
> and appellate counsel was ineffective for failing to raise trial counsel's
> ineffectiveness."
> GROUND FIVE: "Trial counsel was ineffective for failing to adequately advise
> petitioner of his right to testify and failing to testify on his own behalf at trial and
> appellate counsel was ineffective for failing to raise trial counsel ineffectiveness."
> GROUND SIX: "Trial counsel rendered ineffective assistance of counsel by
> misleading/ failing to apprise defendant of consideration relevant to his decision to
> waive his right to a jury, thus rendering his waiver constitutionally insufficient and
> therefore appellate counsel was ineffective for failing to raise trial counsel's
> ineffectiveness."  Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus Under 28
> U.S.C. §2254 at I (paper no. 1).

The court referred the petition to Magistrate Judge M. Faith Angell ("Judge Angell") for a

Report and Recommendation ("R&R").  She recommended the petition be denied and dismissed

without an evidentiary hearing.  Ruiz filed timely objections to the R&R based in part on *Martinez

v. Ryan*, 132 S. Ct. 1309 (2012), allowing a  prisoner to establish cause for a procedural default by

showing inadequate assistance of counsel at an initial collateral review proceeding.   In a Supplemental R&R, Judge Angell, considering *Martinez*, again recommended the petition be denied and dismissed.   Ruiz filed timely objections.[1]

A federal court has jurisdiction over a petition for a writ of habeas corpus challenging state confinement only if a petitioner alleges a violation of federal law or the Constitution and the petitioner has exhausted state court remedies.  28 U.S.C. §§ 2241, 2254.  A district court reviews portions of a magistrate judge's R&R *de novo* if a petitioner objects to them.  28 U.S.C. § 636(b)(1)©.  The R&R and the Supplemental R&R will be considered *de novo*.

## II.   DISCUSSION

### A.   Ground 1: Ruiz is Entitled to an Arrest of Judgment Because the Evidence was Insufficient to Sustain his Conviction

Ruiz asserts he is entitled to habeas relief because the evidence against him was insufficient to support the trial court's verdict of first-degree murder.  Ruiz contends there is "no hard and fast evidence" that he was the killer of the victim or that he had a specific intent to kill.  Obj. R&R at 7. The federal standard for a sufficiency of evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), permits a district court to grant a habeas corpus petition only if the

---

[1] Ruiz requested extensions of time to file his objections to the R&R and his objections to the supplemental R&R.  The court granted these extensions and Ruiz filed his objections within the time granted.

state court decision was: 1) contrary to, or involved an objectively unreasonable application of, clearly established Supreme Court precedent; or 2) an unreasonable determination of the facts based on the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 529 U.S. 362, 409-410 (2000). A federal habeas court, under AEDPA, must be doubly deferential and "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court... [it] may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011).

Ruiz alleges the testimony of two eyewitnesses identifying him as the killer was unreliable since both of the prosecution's identification witnesses, Ms. Roy and Ms. Mercado, admitted they did not see Ruiz fire the first shot. Obj. R&R at 7; *see also* N.T. 10/15/1999 at 23-25, 107. Despite Ruiz's contentions, Judge Keogh found credible Ms. Roy and Ms. Mercado's testimony that they saw Ruiz shoot Cuba after they heard the first shot. *Commonwealth of Pennsylvania v. Jose Ruiz*, No. 894 September Term 1997, (C.P. Phila., June 4, 2002), slip op. at 5-7 (emphasis supplied). Ms. Roy testified she saw Cuba[4] "laying on the floor" and observed Ruiz "over top of [Cuba], but not over top of him, but he was more towards him, and he shot again." N.T. 10/15/1999 at 23. Ms. Mercado testified after Cuba[5] fell to the ground he said in Spanish "Please don't kill me;" she then saw Ruiz shoot Cuba in the face. *Id.* at 106-08.

Ruiz alleges Ms. Castaing, a defense witness at the scene of the crime, testified Ruiz was not the killer and the man involved in the argument with the victim did not have the same skin color as

---

[4] Ms. Roy used the name "Seto" to refer to Mr. Cuba in her testimony. N.T. 10/15/1999 at 20.

[5] Ms. Mercado frequently used Mr. Cuba's first name ("Hiram") in her testimony. N.T. 10/15/1999 at 107.

Ruiz.  Obj. R&R at 7-8.  Judge Keogh noted the inconsistencies in Ms. Castaing's testimony relating to her friendship with people involved in the incident and her observations at the scene of the incident, and found Ms. Castaing's testimony was "contradictory and not credible." *Commonwealth of Pennsylvania v. Jose Ruiz*, No. 894 September Term 1997, (C.P. Phila., June 4, 2002), slip op. at 6 (emphasis supplied).  Judge Keogh, reviewing Ruiz's mandatory sentence of life imprisonment on the first degree murder conviction, stated, "The Commonwealth presented evidence that allowed this fact finder to determine that all elements of the offense [first degree murder] in which [Petitioner] was found guilty, were proven beyond a reasonable doubt." *Id.* at 7.

On direct appeal, the Superior Court found sufficient evidence existed to show Ruiz intended to kill Cuba:

> It is true that the memory of both witnesses was not one-hundred percent perfect.  It is also true that neither Ms. Roy nor Ms. Mercado actually saw [Ruiz] fire the first shot.  These inconsistencies do not cause the evidence to become insufficient.  The trier of fact is the sole arbiter of the credibility of the witnesses and is free to believe all, part, or none of their testimony. *Lehman*, 820 A.2d at 772.  "[W]e may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*  Clearly, the trial court found Ms. Roy and Ms. Mercado credible and found that [petitioner] shot Mr. Cuba in the face while Mr. Cuba pleaded for his life.  These facts are sufficient to show that [petitioner] intended to kill Mr. Cuba. *See Fletcher*, 750 A.2d at 278 (citations omitted) ("Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the body.") *Commonwealth of Pennsylvania v. Jose Ruiz*, No. 894 September Term 1997, (C.P. Phila., June 4, 2002), slip op. at 5-7, aff'd, 863 A.2d 1231, at *4-5 (Pa. Super. 2004) (table) (emphasis supplied).

Considering the evidence as a whole, and reviewing the evidence in the light most favorable to the prosecution, the finding of the Superior Court that there was sufficient evidence at trial to support Ruiz's conviction is not contrary to, or an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).  Any rational trier of fact could have found the essential elements of first-degree murder beyond a reasonable doubt.  Habeas relief on this claim is denied.

**B.      Ground 2: Ruiz is Entitled to a New Trial Because the Verdict was Against the Weight of the Evidence**

Ruiz claims the guilty verdict was against the weight of the evidence.  In his objections to the R&R, Ruiz alleges his claim is not that the verdict was against the weight of the evidence, but that trial counsel was ineffective for failing to preserve this ineffectiveness issue, which he had asserted in his amended PCRA petition.[6]  Obj. R&R at 4-5.  On PCRA review, the Superior Court denied the ineffective assistance of counsel claim as meritless concluding "the evidence overwhelmingly supported the trial court's verdict."  Sup. Ct. PCRA Opinion at 6.

Deciding the weight of the evidence requires an evaluation of the credibility of the evidence presented at trial.  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  A federal habeas court cannot redetermine state court credibility findings on habeas review.  *Id.*  Because the Superior Court found the claim meritless, and a federal habeas court is bound by the factual findings of the state court, Ruiz's counsel was not ineffective for failing to preserve a meritless claim.  *See Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010).  Habeas relief on this claim is denied.

**C.      Grounds 3-6: Ineffective Assistance of Counsel Claims**

A petitioner claiming ineffective assistance of counsel must show: 1) counsel performed deficiently; and 2) the deficient performance prejudiced the defendant.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish counsel's performance was deficient, the petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.

---

[6] The court will construe Ruiz's *pro se* pleading liberally and evaluate his claim that trial counsel was ineffective for failing to preserve the weight of the evidence issue.

Petitioner must demonstrate counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688-89. In order to establish prejudice, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id* at 694. The inquiry is whether the defendant received a fair trial, not whether counsel could have chosen a more appropriate course of action. *Marshall v. Hendricks*, 307 F.3d 36, 91 (3d Cir. 2002).

## I.      Ground 3: Counsel was Ineffective for Failing to Call Alibi Witnesses

Ruiz asserts trial counsel was ineffective for failing to call alibi witnesses at trial. Ruiz raised this issue in his *pro se* and amended PCRA petitions, and Judge Keogh, in his PCRA opinion, addressed the alibi witnesses proffered testimony. In his appeal to the Superior Court of the order denying his amended PCRA petition, Ruiz alleged counsel was ineffective for failing to call his mother, Lisandra Rivera, as an alibi witness. After the Superior Court affirmed Judge Keogh's PCRA opinion, Ruiz unsuccessfully petitioned the Pennsylvania Supreme Court for review. Ruiz's claim that trial counsel was ineffective for failing to call his mother as an alibi witness was fairly presented to the state courts.

Ruiz asserts his mother is an "upstanding citizen" who "would have been a powerful witness for the Petitioner at trial." Obj. Supplemental R&R at 6. He contends his mother was available and her testimony "would have rebutted the Commonwealth's evidence that the defendant killed Hiram Cuba," as well as "lent credence" to the testimony of Jessica Castaing and his own testimony if he had testified. Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus Under 28 U.S.C. §2254 at

17-18 (paper no. 1).

Judge Keogh, determining the record refuted Ruiz's assertion, denied Ruiz's ineffectiveness

claim in his PCRA opinion:

> Trial counsel was aware of the alibi witnesses at issue; however, counsel chose to rely on the testimony of a seemingly unbiased witness.  Trial counsel, Scott DiClaudio, Esquire, testified at the evidentiary hearing that "...I believe we had an independent witness, who had no relation to my client, and I thought that would be the better source of information."  (N.T. 9/24/08 at 32-33).  Therefore, instead of calling Petitioner's mother and girlfriend, trial counsel opted to call eyewitness Jessica Castaing, who had no relation to Petitioner.  Ms. Castaing testified that she witnessed the shooting and Petitioner was not the killer.  It is well settled that the "failure of trial counsel to...present all prospective witnesses is not *per se* ineffective." *Commonwealth v. Flanagan*, 375 Pa. Super. 297, 500, 544 A.2d 1030, 1031 (1988).  Rather, the decision as to which witness to call is a matter of trial strategy. *Commonwealth v. Smallwood*, 497 Pa. 476, 487, 442 A.2d 222, 227 (1982).  "A defendant is not entitled to relief simply because the strategy was unsuccessful." *Commonwealth v. Davis*, 381 Pa.Super. 483, 496, 554 A.2d 104, 111 (1989), *alloc. denied*, 524 Pa. 617, 517 A.2d 380 (1989).  PCRA Opinion at 5.

The Superior Court of Pennsylvania, affirming the denial of Ruiz's PCRA petition, agreed

Ruiz's ineffectiveness claim was without merit:

> Counsel had a reasonable trial strategy for not presenting the testimony of a bias witness whose testimony was clearly tainted by her relationship with Ruiz.  Rather, trial counsel opted to call an eyewitness, Jessica Castaing, who had no relationship to Ruiz, who witnessed the shooting, and testified that Ruiz was not the shooter.  Accordingly, as trial counsel's action was evidently designed to advance Ruiz's interests and defense at trial, his strategy was hardly unreasonable and, as such, the PCRA court did not err in dismissing his ineffectiveness claims in this regard...Moreover, <u>Ruiz failed to establish how he had been prejudiced by trial counsel's failure to call his mother as an alibi witness.  The identification evidence presented at trial was overwhelming, verifying Ruiz as the shooter.</u>  *See* N.T. 10/14/99 at 26-29, 105-108, 148.  Sup. Ct. PCRA Opinion at 5 (emphasis supplied).

The decision to have an alibi witness testify at trial is a strategic decision. A strategic decision by counsel carries a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. Ruiz's trial counsel chose to call an independent witness to testify. The state court appellate review of counsel's tactical decision considered the bias of Ruiz's mother and the weakness of the proffered alibi testimony. It found the prosecution's evidence identifying Ruiz as the shooter overwhelming. The adjudication of this claim is not contrary to *Strickland*, nor an objectively unreasonable application of the law, and is not unreasonable under the facts. Ruiz's claim of ineffective assistance of counsel for failing to call his mother as an alibi witness is denied.

Ruiz's claim that trial counsel was ineffective for failing to call his girlfriend as an alibi witness is procedurally defaulted. A federal habeas court may not review a claim for relief unless the state petitioner has exhausted state court remedies. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A state prisoner must complete "the State's established appellate review process" to "give the state courts one full opportunity to resolve any constitutional issues." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

To exhaust a federal claim, a petitioner must "fairly present" it to the state courts by presenting a "federal claim's factual and legal substance to the state courts in a manner that puts them on notice a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). There is a procedural default if a "petitioner failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735, n.1 (1991). Federal courts are precluded from reviewing a state petitioner's habeas claim if the state court decision rests on a state law ground independent of the federal

question and adequate to support the judgment.  *Id.* at 729.

A petitioner can overcome the procedural default by showing: (1) the rule applied was an inadequate basis for the state court decision or not independent of the claim's merits, *Harris v. Reed*, 489 U.S. 255, 260-61 (1989); (2) "cause for the default and actual prejudice as a result of the alleged violation of federal law[,]" *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); or (3) absent review, a miscarriage of justice would occur, *id.*  A petitioner asserting a claim of actual innocence under the miscarriage of justice exception must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The petitioner must show, in light of the new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Id.* at 327.

Ruiz failed to "fairly present" and exhaust in state court the claim of ineffective assistance of counsel for failure to call Ruiz's girlfriend as an alibi witness since he did not include this claim in his PCRA appeal to the Superior Court or the Pennsylvania Supreme Court.  The claim is procedurally defaulted since independent and adequate state law grounds, requiring waiver of an issue if a petitioner could have raised a claim but failed to do so in a prior state post-conviction proceeding, preclude state court review.  *See* 42 Pa. Cons. § 9544(b); *Coleman*, 501 U.S. at 729. Ruiz has not alleged cause or prejudice to excuse the default, nor has he established that failure to consider this claim would result in a fundamental miscarriage of justice because Ruiz has not presented any new evidence to support a claim of actual innocence that would show more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

10

ii.     **Ground 4: Counsel was Ineffective for Failing to Move to Suppress the Unnecessarily Suggestive Photo Array**

Ruiz contends counsel was ineffective for failing to move for suppression of an unnecessarily suggestive photo array.  Ruiz abandoned this claim in his PCRA appeal to the Superior Court and the Pennsylvania Supreme Court; it is procedurally defaulted and precluded from state court review. *See* 42 Pa. Cons. § 9544(b); *Coleman*, 501 U.S. at 729.  Ruiz cannot overcome this procedural default because he failed to establish cause and prejudice, or that a fundamental miscarriage of justice would occur, to excuse the default.

Ruiz raises the additional claim that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to move for suppression of an unnecessarily suggestive photo array.  Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus Under 28 U.S.C. §2254 at 20 (paper no. 1).  This claim is unexhausted and procedurally defaulted since Ruiz never presented it to the state courts, and independent and adequate state law grounds preclude state court review of an issue petitioner could have raised in state court proceedings but did not raise.[7]  Since petitioner has not established cause and prejudice to overcome the procedural default, and has not established that a miscarriage of justice would occur if this procedural default were not excused, this claim cannot be addressed on the merits.

iii.    **Grounds 5-6: Ineffective Assistance of Counsel Claims Under *Martinez v. Ryan***

Ruiz filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act

---

[7] Ruiz raised the claim of appellate counsel's ineffectiveness in his *pro se* PCRA petition. However, this claim was not included in his amended counseled PCRA petition or in his appeal of that petition to the Superior Court and the Pennsylvania Supreme Court.

("PCRA"), 42 Pa. C.S. §§ 9541, *et seq.*   His appointed counsel, David Rudenstein, Esq. ("Rudenstein"), filed an amended PCRA petition.   Rudenstein failed to raise two issues in the amended petition that Ruiz had raised in his initial *pro se* PCRA petition: (1) trial counsel was ineffective for failing to advise him adequately of his right to testify; and (2) trial counsel was ineffective for failing to advise him adequately on his decision to waive a jury trial.   Ruiz filed *pro se* objections to the omission of these claims in the Common Pleas Court, the Superior Court and the Pennsylvania Supreme Court.[8]   Ruiz also filed objections asserting his right to litigate these claims in response to Judge Angell's R&R and Supplemental R&R.

In *Martinez v. Ryan*, the Supreme Court decided, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial,"  132 S. Ct. at 1315, but "the holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 132 S. Ct. at 1320.  The Court of Appeals articulated the three conditions that must be met under *Martinez* to show cause excusing state procedural default:

> (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard) and (c) the underlying claim of trial counsel ineffectiveness is "substantial," meaning "the claim has some merit," analogous to the substantiality requirement for a certificate of appeal.  *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).

---

[8] Ruiz included these objections and a print-out of the PCRA docket as Exhibits "A," "B," and "D" to his Memorandum of Law in Support of Petition for Writ of Habeas Corpus Under 28 U.S.C. §2254 (paper no. 1).

12

Ruiz contends *Martinez* excuses the procedural default of his fifth and sixth habeas claims.

### (a).     Ground 6: Counsel was Ineffective for Failing to Apprise Ruiz of Considerations Relevant to his Decision to Waive his Right to a Jury

Ruiz contends his counsel was ineffective for failing to advise him adequately about waiving a jury trial because his counsel "misled him into believing that, even if convicted, he would only receive a sentence of seven and one-half to fifteen (7 ½ to 15) years." Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus Under 28 U.S.C. §2254 at 26 (paper no. 1). Ruiz alleges, "Trial Counsel's erroneous advice was unreasonable and enticing to the defendant who only had a 9th grade education and who could barely speak english...Had Trial Counsel not offered such erroneous advice, petitioner would have elected to take his charges before a jury." *Id.* at 26-27.

The record is to the contrary. Ruiz signed a written "Waiver of Jury Trial" stating:

> AND NOW, this 15th day of October 15, 1999, comes the defendant and pleads not guilty, and with the consent of his attorney, and the Commonwealth and the approval of the Court, waives a jury trial and elects to be tried by a judge without a jury, fully understanding that if he were tried by a jury: (a) the jury would be chosen from members of the community thereby producing a jury of his peers; (b) any verdict rendered by a jury must be unanimous, that is, all twelve jurors must agree before they can return a verdict of guilty; and (c) he would be permitted to participate in the selection of the jury. State Court Record.

The waiver was also signed by Ruiz's attorney, the attorney for the Commonwealth, and Judge Keogh. Ruiz, duly sworn, voluntarily waived his right to trial by jury in a lengthy judicial colloquy on the record:

> THE COURT: I understand from your lawyer that you want me to hear this case instead of having a jury trial. Is that right?
> RUIZ: Yes.
> THE COURT: I've been handed the waiver of jury trial form. The three sentences

there outline the three most important things that you have to know before you give up your right to a jury trial.  Is that your signature on there?

RUIZ: Yes.

THE COURT: Did you sign that here in court today?

RUIZ: Yes.

THE COURT: Did you sign that of your own free will?

RUIZ: Yes.

THE COURT: How old are you?

RUIZ: Twenty-three.

THE COURT: How far did you go in school?

RUIZ: Ninth.

THE COURT: Do you read, write and understand the English language?

RUIZ: Yes.

THE COURT: Are you today under the influence of alcohol, drugs or any other medication?

RUIZ: No.

THE COURT: Have you ever been hospitalized for or treated for a mental illness?

RUIZ: No.

THE COURT: I want you to understand that you do have an absolute right to have a jury trial on these charges.  If you had indicated that, I would have sent for a panel of thirty or forty people who would have been previously drawn at random from the motor vehicle and the voter registration list in the City and County of Philadelphia. From that group a jury of twelve persons plus some extras, two or more, would be picked.  The way they're selected and impaneled, they would be considered a jury of your peers.  The way they're actually picked is in the following way.  Is this capital?

MR. MARGIOTTI: Yes.

...[The court explained how a jury would be selected and impaneled]...

THE COURT: If you give up your right to a jury trial, in essence what you're asking for is a jury of one.  That would be me.  I'll hear the evidence in this case, and I would decide whether you were guilty or not guilty, so therefore, you obviously wouldn't have the possibility of a mistrial because of a hung jury, but in all other respects, your presumption of innocence, the Commonwealth's burden fo proof, the rules of evidence and the rules of criminal procedure remain the same.

Now, on my sheet, as I indicated to you what the charges are, murder, carrying a

14

firearm without a license, carrying a firearm on public streets, possessing instruments of a crime, murder can be murder in the first, second or third degree.

Third degree murder carries a maximum sentence of forty years. Second degree murder carries a mandatory sentence of life imprisonment, and first degree murder is either the death penalty or mandatory life sentence. Carrying a firearm without a license is a felony of the third degree, seven-year maximum. The other two charges are misdemeanors of the first degree. They each carry a maximum sentence of five years.

Now, understanding what the charges are, what your rights are at a jury trial and what the sentences are that can be and that must be imposed for certain convictions, is it still your desire to have me hear this case instead of having a jury trial.

RUIZ: Yes.

THE COURT: Has anybody forced you, threatened you or promised you anything in order to have you give up your right to a jury trial?

RUIZ: No.

THE COURT: Are you making that decision of your own free will?

RUIZ: Yes.

THE COURT: Have you had a sufficient opportunity to discuss that decision with your lawyer?

RUIZ: Yes, sir.

THE COURT: Are you satisfied with your lawyer's advice and representation?

RUIZ: Yes.

MR. MARGIOTTI: Your Honor, we'll be satisfied to have the court make that determination of penalty.

THE COURT: Very well. The court finds that the defendant is making a knowing, voluntary and intentional waiver of his right to a jury. The court accepts the waiver. The defendant is permitted to waive formal arraignment. Pleas of not guilty are entered. N.T. 10/15/1999 at 3-10 (emphasis added).

The signed written waiver of a jury trial and the in-depth exchange between Judge Keogh and Ruiz under oath estops Ruiz from claiming he was inadequately advised of his right to a jury trial. Ruiz was advised of the right to trial by jury, the nature of a jury trial, and the result of waiving a jury trial before he swore and knowingly and voluntarily waived his right under oath. He cannot now

15

claim he perjured himself or allege deficient performance by counsel to obtain relief.

**(b). Ground 5: Counsel was Ineffective for Failing to Adequately Advise Ruiz of his Right to Testify**

Ruiz contends he was not adequately advised of his right to testify at trial. The trial judge did not inquire on the record whether Ruiz understood he had a right to testify and did not elicit a formal waiver of the right. N.T. 5/12/15 at 7. However, a judge has no obligation to advise a defendant of his right to testify, and often hesitates to do so in order not to put a judicial imprimatur on the right. *United States v. Pennycooke*, 65 F.3d 9, 11-13 (3d Cir. 1995). Counsel has the professional responsibility to inform a client of his constitutional right to testify and that the decision to exercise this right is the client's decision. *United States v. Pennycooke*, 65 F.3d 9, 11-13 (3d Cir. 1995). DiClaudio testified he does not have a specific recollection of informing Ruiz about his right to testify, but his standard practice has been to advise every client he has represented of this right.[9] N.T. 5/12/15 at 37.

Ruiz contended his testimony would have "created an alibi defense" since he went shopping on the day of the homicide and was eating dinner at his mother's house at the time of the homicide.

_____

[9] It is quite possible Scott DiClaudio, Esq., a respected criminal lawyer, did not advise his client of the right to testify. He had no specific recollection at the evidentiary hearing of doing so. DiClaudio has made inexcusable misrepresentations of fact in the past when under pressure. After a disciplinary hearing for mishandling a client's appeal and for misrepresentations to the Office of Disciplinary Counsel, following an informal admonition in 2003 for his failure to file a statement of matters complained of on appeal, and informal admonitions in 2008 for making false and misleading statements to the Office of Disciplinary Counsel in one matter and for his failure to have a written fee agreement in a second matter, DiClaudio was suspended for three months from the practice of law by the Pennsylvania Supreme Court but the suspension was stayed and he was placed on probation for one year subject to a practice monitor. The Disciplinary Board, recognizing how DiClaudio "[fell] short" in past opportunities to address inconsistencies in his practice, had recommended a six-month suspension stayed for a two-year period of probation subject to a practice monitor.

16

N.T. 5/12/15 at 61-62.  He averred his defense at trial (misidentification) would have benefitted from his proffered alibi testimony.

Ruiz was convicted of first degree murder in a bench trial, not a jury trial.  Judge Keogh, the fact finder, noted in his PCRA opinion his reasons for doubting Ruiz's alibi testimony in support of the ineffectiveness of counsel for not putting his mother on the stand at trial:

> First, Petitioner was arrested more than five weeks after the commission of this crime and did not provide any specific reasoning as to why he would have been eating dinner at his mother's house on the night in question.  A night of significance, such as a birthday or anniversary, might serve as a more certain reference point for the alibi witnesses to recall the events of that evening, five weeks prior to the arrest date, thereby adding veracity to their alibi testimony.  In fact, he gave an indeterminate explanation as to why he was at his mother's dinner table that evening: "Well, that is what we usually do.  I usually go to my Mother's house and we have dinner once in a while.  So it was not–that is what always happens."  (N.T. 9/24/08 at 27).  This imprecise testimony would not have been sufficient to raise reasonable doubt in the Commonwealth's case or change the outcome of the verdict.  *See Commonwealth v. Early*, 377 Pa. Super. 219, 223, 546 A.2d 1236 (1998) (trial counsel could not have been ineffective for failing to present purported alibi witness where witness could not say unequivocally that the appellant was with the witness at the precise time of the crime), appeal denied, 521 Pa. 629, 558 A.2d 531 (1989); *Commonwealth v. Jones*, 602 A.2d 820, 822 (Pa. 1992) (alibi witness "must preclude the possibility of defendant's presence at the scene of the crime").  PCRA Opinion at 5-6.

At the federal evidentiary hearing, Ruiz, for the first time, averred matters Judge Keogh noted in his PCRA opinion were missing from prior defense allegations, and would have added veracity to Ruiz's alibi testimony.  Judge Keogh then concluded that the prosecution identification witnesses were credible and Ruiz was the killer with specific intent to kill, *i.e.*, Ruiz was guilty of first degree murder (with a mandatory life, if not death, sentence).

The finding that the prosecution identification witnesses were credible was directly contrary to the alibi testimony of the defense.  This was a bench trial.  The fact finder believed the prosecution

17

eyewitness identification testimony that Ruiz was the killer. Ruiz's testimony directly to the contrary would necessarily have been rejected. Ruiz suffered no prejudice; Judge Keogh's verdict of guilty would not have been changed by Ruiz's testimony. Ruiz's underlying ineffective assistance claim that counsel failed to advise him of his right to testify is not substantial under *Martinez* because it would not establish possible innocence and in the circumstances of a bench trial was not a violation of Ruiz's constitutional rights.

III.   **CONCLUSION**

None of Ruiz's claims entitle him to federal habeas relief. The court will overrule petitioner's objections and deny the petition for writ of habeas corpus.

A certificate of appealability shall issue only if a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Ruiz has not made such a showing, this court will not grant a certificate of appealability. An appropriate Order follows. The petitioner can seek a certificate of appealability from the Court of Appeals.